IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-7

 No. 406A19

 Filed 12 March 2021

 DENNIS D. CHISUM, individually and derivatively on behalf of JUDGES ROAD
 INDUSTRIAL PARK, LLC, CAROLINA COAST HOLDINGS, LLC, and
 PARKWAY BUSINESS PARK, LLC

 v.
 ROCCO J. CAMPAGNA, RICHARD J. CAMPAGNA, JUDGES ROAD
 INDUSTRIAL PARK, LLC, CAROLINA COAST HOLDINGS, LLC, and
 PARKWAY BUSINESS PARK, LLC

 Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an opinion and final judgment

 entered on 11 October 2018 and an order and opinion on post-trial motions entered

 on 25 April 2019 by Judge Gregory P. McGuire, Special Superior Court Judge for

 Complex Business Cases, in Superior Court, New Hanover County, after the case was

 designated a mandatory complex business case by the Chief Justice pursuant to

 N.C.G.S. § 7A-45.4(b). Heard in the Supreme Court on 12 October 2020.

 Sigmon Law, PLLC, by Mark R. Sigmon, and Whitfield Bryson & Mason, LLP,
 by Daniel K. Bryson, Matthew E. Lee, and Jeremy R. Williams, for plaintiff-
 appellee/appellant.

 Reiss & Nutt, PLLC, by W. Cory Reiss, and Shipman & Wright, LLP, by James
 T. Moore and Gary K. Shipman, for defendants-appellants/appellees.

 ERVIN, Justice.

¶1 In this appeal from the Business Court, we address a number of issues arising

 from a dispute between plaintiff Dennis Chisum and defendants Rocco Campagna
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 and Richard Campagna concerning their respective membership interests in three

 related limited liability companies. For the reasons set out below, we affirm the trial

 court’s judgment and orders, in part, and reverse this judgment and those orders and

 remand, in part.

 I. Factual Background

 A. Substantive Facts

 1. Formation of Limited Liability Companies

¶2 Beginning in the 1990s, The Camp Group–an entity which was equally owned

 by Richard Campagna and Rocco Campagna–formed three limited liability

 companies–Judges Road Industrial Park, LLC; Carolina Coast Holdings, LLC; and

 Parkway Business Park, LLC–for the purpose of developing commercial real estate

 in Wilmington. Although Mr. Chisum was a founding member of Judges Road and

 Carolina Coast, he did not become a member of Parkway until 16 October 2007. The

 members of each LLC entered into company-specific operating agreements which

 specified (1) the initial capital contributions that each member was required to make;

 (2) the membership interests of each owner, which were set forth in documents

 referred to as Schedule 1s1; (3) the managers of each LLC; and (4) the rules concerning

 “capital calls” for the LLCs, which governed requests for additional capital

 contributions from members over and above the members’ initial contributions.

 1 The Camp Group transferred its interest in the LLCs to the Campagnas individually

 in 2007.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶3 The operating agreements specified that member contributions were measured

 in “capital units,” with each $1,000.00 in contributed capital constituting a single

 capital unit. The operating agreements further provided that members might be

 required to make additional capital contributions “ratably in accordance with such

 Members’ then existing Membership Interest within the time period approved by the

 Majority in Interest of the Members” if, in the case of Judges Road and Carolina

 Coast, a capital call was requested by the managers and approved by “a Majority in

 Interest of the Members” or if, in the case of Parkway, a capital call was requested by

 a majority of the members. In the event that any member failed to make the payment

 required by a capital call, the managers could “elect to allow the remaining Members

 . . . to contribute to the Company, pro rata by Membership Interest, such Additional

 Capital Contribution.” If one or more of the other members elected to proceed in that

 fashion, that member would be credited with additional capital units and would

 obtain a proportionate increase in his or her ownership interest that would be offset

 by a decrease in the non-contributing members’ ownership interests.

¶4 The operating agreements further provided that any member’s membership

 interest could be transferred by “sale, assignment, gift, pledge, exchange or other

 disposition” “after the Membership Interest has been offered to the Company and to

 the Members,” with the seller being required to give “thirty . . . days written notice of

 his intention to sell or otherwise transfer all or any portion of his interest in the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Company.” In addition, the operating agreements included provisions governing the

 voluntary transfer of membership interests. Between 2007 and 2012, the Campagnas

 directed a number of capital calls for the three LLCs.

 2. Dilution of Mr. Chisum’s Interest in Judges Road

¶5 At the time of its formation in 1996, Mr. Chisum owned a 35% interest in

 Judges Road, with The Camp Group having served as the manager of Judges Road

 from its formation until 2007, when Richard Campagna was designated to fulfill the

 role. By 2010, Mr. Chisum’s membership interest in Judge’s Road had been reduced

 to 18.884%. On 25 June 2012, James MacDonald, the attorney for all three LLCs,

 mailed a letter to Mr. Chisum notifying him that there had been a $100,000.00 capital

 call for Judges Road and that a meeting had been scheduled for 2 July 2012 in order

 to amend the Judges Road operating agreement. In addition, the letter stated, in

 relevant part, that:

 [b]ased on the information provided by the accountant[,]
 [Richard Campagna] and [Rocco Campagna] have been
 advised by the accountant that your interest has been
 diluted to the point that you have no remaining equity in
 the Company. If you do not participate in this capital call,
 you will no longer be deemed a member and your interest
 will be considered diluted in full.

¶6 The 2 July 2012 meeting occurred in Mr. Chisum’s absence. At the meeting,

 the Campagnas voted to fully dilute Mr. Chisum’s membership interest based upon

 his failure to make the contribution required by the capital call. According to the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 meeting minutes, Mr. Chisum’s “membership interest would be exhausted and

 extinguished if future capital calls were not timely made.” The Campagnas, however,

 took control of the LLC at the conclusion of the 2 July 2012 meeting and failed to

 either include Mr. Chisum in the making of future operational decisions or correspond

 with him any further for the purpose of apprising him of his membership status. In

 addition, the Campagnas failed to amend the Judges Road operating agreement to

 reflect that Mr. Chisum’s membership interest had been extinguished.

¶7 On 27 August 2012, the Campagnas paid the entire $100,000.00 capital call

 that had been made for Judges Road, with this amount being inclusive of Mr.

 Chisum’s portion. In spite of the fact that the Campagnas believed that they each

 held a 50% ownership interest in Judges Road from and after the date of the 2 July

 2012 meeting, Mr. Chisum continued to receive K-1s relating to Judges Road through

 the 2013 tax year, with Mr. Chisum’s 2012 K-1 for Judges Road showing that he held

 an 18.884% ownership interest in the company and with his 2013 K-1 for Judges Road

 reflecting that, while he held an 18.884% interest in that company at the beginning

 of the year, he held no interest whatsoever by its end. The 2013 K-1 for Judges Road

 that Mr. Chisum received indicated that it was his “[f]inal” Judges Road K-1.

 3. Dilution of Mr. Chisum’s Interest in Parkway

¶8 Parkway was formed in 1998 by The Camp Group and Caporaletti

 Development, LLC, with Anthony Caporaletti and Katrina Caporaletti serving as the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 company managers. In 2004, Caporaletti Development resigned from Parkway and

 sold its membership interest to Carolina Coast, with the Campagnas having become

 Parkway’s managers at that time. Mr. Chisum joined Parkway in 2007 and held an

 8.34% membership interest in the company.

¶9 After the 2 July 2012 Judges Road meeting, the Campagnas took control of

 Parkway as well. On 27 August 2013, Parkway mailed Mr. Chisum’s 2012 Parkway

 K-1 to him; this K-1 showed that, at the end of 2012, Mr. Chisum held an 8.34%

 membership interest in the company. At some point in 2014, Parkway sent Mr.

 Chisum his 2013 K-1 by means of a letter dated 7 April 2014. The 2013 Parkway K-

 1 stated that, while Mr. Chisum held an 8.34% ownership interest at the beginning

 of the year, he had no interest in the company at the end of 2013, with his 2013 K-1

 being marked as Mr. Chisum’s “[f]inal” Parkway K-1.

 4. Dilution of Mr. Chisum’s Interest in Carolina Coast

¶ 10 At the time of its formation in 2000, Mr. Chisum had a 33.333% membership

 interest in Carolina Coast. Although Mr. Chisum and the Campagnas each served

 as managers at the time that the company was organized, the Carolina Coast

 operating agreement was changed in 2007 to provide for a single manager, a role that

 Richard Campagna was designated to fill. By 2010, Mr. Chisum’s membership

 interest in Carolina Coast had been reduced to 16.667%.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 11 A Carolina Coast membership meeting was held on 4 October 2010, at which

 Mr. Chisum was told that he needed to repay a loan that he and his wife, Blanche

 Chisum, had obtained and that had been secured by the LLCs. In response, Mr.

 Chisum argued that the repayment of the loan was not his sole responsibility and

 that he lacked sufficient funds to repay the loan. In spite of Mr. Chisum’s objections,

 the Campagnas assessed a capital call in the amount of $63,500.00 against Mr.

 Chisum, gave Mr. Chisum one week to make the required capital contribution, and

 warned Mr. Chisum that, in the event that he failed to make the required

 contribution, his interest in Carolina Coast would be diluted. After Mr. Chisum failed

 to make the required payment, the Campagnas paid off the loan on 27 October 2010.

¶ 12 After the 4 October 2010 meeting, the Campagnas acted as if Mr. Chisum’s

 membership interest in Carolina Coast had been extinguished in full. In 2011, Mr.

 Chisum received his 2010 K-1, which was marked as his “[f]inal” K-1 relating to

 Carolina Coast and which stated that Mr. Chisum’s membership interest in that

 company had been reduced to zero. Although Mr. Chisum believed that his 2010

 Carolina Coast K-1 was in error and that he continued to have an ownership interest

 in Carolina Coast, Mr. Chisum never received another K-1 from Carolina Coast after

 2011.

 B. Procedural History
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 13 Mr. Chisum did not take any action to ascertain the status of his membership

 interest in any of the LLCs until he initiated this action in 2016. In March 2016, Mr.

 Chisum went to a storage facility owned by Judges Road for the purpose of accessing

 his complimentary owner’s unit. At that time, he was approached by the facility’s

 property manager, who told Mr. Chisum that he could no longer use the storage unit

 given that Judges Road had sold the facility to a third-party buyer. Upon receiving

 this information, Mr. Chisum searched the relevant tax records and discovered the

 existence of a deed transferring the Judges Road storage facility to a new owner on 1

 February 2016 for a payment of $5.75 million.

 1. Original Complaint and Related Proceedings

¶ 14 On 19 July 2016, Mr. Chisum filed a verified complaint against the

 Campagnas, Judges Road, Parkway, and Carolina Coast in which he asserted claims

 for (1) conversion, on the theory that the Campagnas had wrongfully converted his

 ownership interests in the three LLCs to their own use while intentionally concealing

 their wrongful conduct from him; (2) unfair and deceptive trade practices, on the

 theory that the Campagnas had converted Mr. Chisum’s ownership interests in the

 LLCs to their own use by making fraudulent capital calls for the purpose of fully

 diluting his ownership interests; (3) unjust enrichment; (4) a declaration that Mr.

 Chisum continued to own interests in each of the three LLCs; and (5) a claim seeking

 judicial dissolution of the LLCs. Based upon these claims for relief, Mr. Chisum
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 sought an award of compensatory and punitive damages and the dissolution and

 liquidation of all three LLCs pursuant to N.C.G.S. § 57D-6-02.

¶ 15 On the same day that he filed his complaint, Mr. Chisum sought and obtained

 the entry of a temporary restraining order against the Campagnas that prevented

 them from taking any further action that would have the effect of diminishing the

 LLCs’ assets. On 3 August 2016, however, Judge Phyllis M. Gorham entered an order

 denying Mr. Chisum’s request for the issuance of a preliminary injunction and

 dissolving the temporary restraining order. On 19 August 2016, the Chief Justice

 designated this case a complex business case. On 19 September 2016, the Campagnas

 filed an answer to Mr. Chisum’s complaint in which they denied the material

 allegations of the complaint; asserted a number of affirmative defenses, including the

 expiration of the applicable statutes of limitation, laches, estoppel, waiver, and

 unclean hands; and sought the dismissal of Mr. Chisum’s complaint for failure to

 state a claim for which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule

 12(b)(6).

 2. Amended Complaint and Related Proceedings

¶ 16 On 8 February 2017, Mr. Chisum filed an amended complaint in which he

 reasserted the claims that he had alleged against the Campagnas in his original

 complaint and added derivative claims against the Campagnas on behalf of Judges

 Road, Parkway, and Carolina Coast. In addition, the amended complaint asserted
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

claims against Mr. MacDonald; the MacDonald Law Firm, PLLC; Milton Hardison,

who served as the accountant for all three LLCs; and Hardison & Chamberlain,

CPAs, PA. Finally, the amended complaint asserted (1) derivative and individual

claims for breach of fiduciary duty and constructive fraud against the Campagnas;

(2) derivative and individual claims for breach of fiduciary duty, constructive fraud,

and professional negligence or legal malpractice against Mr. MacDonald and the

MacDonald Law Firm; (3) derivative and individual claims for breach of fiduciary

duty, constructive fraud, and professional negligence against Mr. Hardison and

Hardison & Chamberlain; (4) derivative and individual claims for civil conspiracy

against the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison,

and Hardison & Chamberlain; (5) individual claims for conversion and fraud in the

inducement against the Campagnas; (6) individual claims for failure to pay

distributions, unjust enrichment, and declaratory judgment against the Campagnas

and the three LLCs; (7) individual claims for unfair and deceptive trade practices

against the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison,

and Hardison & Chamberlain; and (8) an individual claim for judicial dissolution

against the LLCs pursuant to N.C.G.S. § 57D-6-02. As a result, based upon these

claims, Mr. Chisum (1) derivatively and individually sought to recover punitive

damages from the Campagnas, Mr. MacDonald, the MacDonald Law Firm, Mr.

Hardison, and Hardison & Chamberlain; (2) individually sought to pierce the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 corporate veil in order to hold the Campagnas personally liable “for the debts and

 obligations of the [three] LLCs, as alleged”; and (3) derivatively and individually

 sought to recover actual, compensatory, and consequential damages from all of the

 defendants, jointly and severally.

¶ 17 In March of 2017, each of the defendants filed answers to the amended

 complaint and moved to dismiss it. By 7 July 2017, each of the derivative and

 individual claims against Mr. MacDonald, the MacDonald Law Firm, Mr. Hardison,

 and Hardison & Chamberlain had been voluntarily dismissed, so that the only

 remaining claims were the individual and derivative claims that Mr. Chisum had

 asserted against the Campagnas and the LLCs.

 3. Pre-Trial Rulings by the Trial Court

 a. 20 July 2017 Order on Cross-Motions for Summary Judgment

¶ 18 On 8 February 2017, Mr. Chisum sought partial summary judgment in his

 favor with respect to the declaratory judgment claim that he had individually

 asserted against the Campagnas and Judges Road concerning his status as an owner

 or member of Judges Road. In response, defendants moved for summary judgment

 in their favor with respect to this claim on the grounds that it was barred by the

 applicable statute of limitations. On 20 July 2017, the trial court entered an order

 concluding that Mr. Chisum’s declaratory judgment claims were not subject to any

 statute of limitations given that the amended complaint “allege[d] an actual
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 controversy between [Mr. Chisum] and Rocco and Richard [Campagna] over their

 respective rights and obligations as members of Judges Road, irrespective of the claim

 for conversion”; that the trial court “[could ] not find, and [d]efendants [did] not

 reference[ ], any North Carolina authority citing to a specific statute of limitations

 for a declaratory judgment claim”; and that the timeliness of a declaratory action was

 more appropriately challenged through the assertion of a defense of laches, which

 defendants had failed to raise in response to Mr. Chisum’s declaratory judgment

 claim. As a result, the trial court denied defendants’ summary judgment motion. In

 addition, after granting Mr. Chisum’s summary judgment motion, in part, and

 determining that the Judges Road operating agreement “would not permit a

 member’s interest to be diluted to zero, or extinguished entirely, by the failure to

 contribute capital in response to a capital call,” the trial court denied the remainder

 of Mr. Chisum’s summary judgment motion.

 b. 7 November 2017 Order on the Campagnas’ Motion to Dismiss

¶ 19 On 14 March 2017, defendants filed a motion seeking the dismissal of Mr.

 Chisum’s claims for breach of fiduciary duty, constructive fraud, fraud in the

 inducement, unjust enrichment, and unfair and deceptive trade practices for failure

 to state a claim for which relief could be granted pursuant to N.C.G.S. § 1A-1, Rule

 12(b)(6) and seeking the dismissal of the fraud in the inducement claim for lack of

 particularity pursuant to N.C.G.S. § 1A-1, Rule 9(b). On 7 November 2017, the trial
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 court entered an order granting defendants’ motion to dismiss the derivative claims

 for breach of fiduciary duty and constructive fraud to the extent that they rested upon

 allegations that defendants had engaged in making “sham” capital calls, improperly

 attempted to amend the operating agreements, and “[g]enerally attempt[ed] to freeze

 Mr. Chisum out of the LLCs” while denying defendants’ dismissal motions directed

 to those same claims to the extent that they rested upon allegations that the

 Campagnas had improperly funneled money and misappropriated corporate

 opportunities to and from themselves and the LLCs and had sold assets belonging to

 the LLCs while diverting the proceeds of the relevant transactions to themselves and

 other entities. Finally, the trial court dismissed Mr. Chisum’s individual claims for

 breach of fiduciary duty, constructive fraud, fraud in the inducement, unjust

 enrichment, and unfair and deceptive trade practices.

 c. 2 March 2018 Order on Cross-Motions for Summary Judgment

¶ 20 On 15 May 2017, Mr. Chisum filed a motion seeking partial summary

 judgment in his favor with respect to his claim for a declaration concerning his status

 as an owner or member of Parkway and Carolina Coast. On 28 July 2017, Mr.

 Chisum filed a motion seeking partial summary judgment in his favor with respect

 to his individual claim against Richard Campagna for constructive fraud and his

 request for the entry of a declaratory judgment against each of the defendants

 concerning both his status as a member in each of the LLCs and the amount of his
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 membership interest in each of the LLCs. On 2 August 2017, defendants filed a

 motion seeking the entry of summary judgment in their favor with respect to each of

 the remaining claims asserted in the amended complaint.

¶ 21 On 2 March 2018, the trial court entered an order determining that the

 Parkway and Carolina Coast operating agreements did not permit a member’s

 interest to be extinguished for failure to contribute capital in response to a capital

 call. On the other hand, the trial court declined to enter summary judgment in Mr.

 Chisum’s favor with respect to the issue of whether Mr. Chisum continued to own an

 interest in Parkway or Carolina Coast. Finally, the trial court dismissed Mr.

 Chisum’s conversion claim while denying the remainder of defendants’ summary

 judgment motion.

 d. 27 July 2018 Order Vacating Prior Declaratory Judgment Order

¶ 22 On 27 July 2018, the trial court, acting on its own motion, entered an order

 vacating its prior order determining that the Parkway and Carolina Coast operating

 agreements did not permit the extinguishment of membership interests based upon

 a member’s failure to comply with a capital call. In making this determination, the

 trial court stated that, “[u]pon further consideration,” “statutes of limitations are

 appropriately applied to declaratory judgment claims, and . . . laches also may apply

 under appropriate facts.” Based upon that logic, the trial court determined that the

 three-year statute of limitations for breach of contract actions applied to Mr.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Chisum’s declaratory judgment claims and that it lacked the authority to decide the

 declaratory judgment claims on the grounds that the record reflected the existence of

 a jury question concerning the extent to which these claims were barred by the

 applicable statute of limitations.

 4. Trial

¶ 23 This case came on for trial before the trial court and a jury beginning on 6

 August 2018. During the course of the trial, the trial court struck defendants’ laches

 defense as a sanction for discovery violations. On 13 August 2018, the trial court

 directed a verdict in favor of defendants with respect to all of Mr. Chisum’s claims

 relating to Carolina Coast on statute of limitations grounds and summarized its

 decision by stating that:

 no reasonable juror could conclude from the evidence that
 has been presented that Mr. Chisum . . . would not
 reasonably have known that the Campagnas were in
 breach of the operating agreement and considered him
 ousted as an LLC member any later than July—the—prior
 to the July date in 2013. That would be the three-year
 mark. . . .

 [A]gain, no reasonable juror could conclude that [Mr.
 Chisum] would not have known that there was a potential
 breach of his rights under the LLC under the operating
 agreement as of no later than October of 2011.

 On the other hand, at the close of all of the evidence, the trial court denied the

 defendants’ motion for a directed verdict with respect to all of the other remaining

 claims and submitted those claims for the jury’s consideration after rejecting
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 defendants’ request that the trial court instruct the jury with respect to Mr. Chisum’s

 constructive fraud claim that defendants would have rebutted any presumption of

 fraud arising from a breach of fiduciary duty by showing that they acted openly,

 fairly, and honestly in their dealings with the LLCs and Mr. Chisum.

¶ 24 On 15 August 2018, the jury returned the following verdict:

 1. Did Dennis Chisum file this lawsuit within three years
 of the date that he knew, or reasonably should have
 known, that the Campagnas no longer considered
 Dennis Chisum to be a member of Parkway and were
 excluding him from his membership rights in
 Parkway?

 Yes.

 2. Was Parkway damaged by a failure of Richard
 Campagna to discharge his fiduciary duties as
 manager of the company?

 Yes.

 3. Did Richard Campagna take advantage of a position of
 trust and confidence to bring about the transfer of
 money and real property from Parkway to himself or
 his other companies, including the Camp Group, LLC?

 Yes.

 4. What amount, if any, is Parkway entitled to recover
 from Richard Campagna as damages?

 $128,757.00

 5. Was Parkway damaged by a failure of Rocco Campagna
 to discharge his fiduciary duties as manager of the
 company?
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 No.

6. Did Rocco Campagna take advantage of a position of
 trust and confidence to bring about the transfer of
 money and real property from Parkway to himself or
 his other companies, including the Camp Group, LLC?

 Yes.

7. What amount, if any, is Parkway entitled to recover
 from Rocco Campagna as damages?

 $128,757.00

8. Did Dennis Chisum file this lawsuit within three years
 of the date that he knew, or reasonably should have
 known, that the Campagnas no longer considered
 Dennis Chisum to be a member of Judges Road and
 were excluding him from his membership rights in
 Judges Road?

 Yes.

9. Was Judges Road damaged by a failure of Richard
 Campagna to discharge his fiduciary duties as
 manager of the company?

 Yes.

10. Did Richard Campagna take advantage of a position of
 trust and confidence to bring about the transfer of
 money from Judges Road to himself or his other
 companies, including the Camp Group, LLC?

 Yes.

11. What amount, if any, is Judges Road entitled to recover
 from Richard Campagna as damages?

 $1.00
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

12. Was Judges Road damaged by a failure of Rocco
 Campagna to discharge his fiduciary duties as
 manager of the company?

 No.

13. Did Rocco Campagna take advantage of a position of
 trust and confidence to bring about the transfer of
 money from Judges Road to himself or his other
 companies, including the Camp Group, LLC?

 Yes.

14. What amount, if any, is Judges Road entitled to recover
 from Rocco Campagna as damages?

 $1.00

15. Did Richard Campagna and Rocco Campagna conspire
 to divert money and property from Parkway to the
 Camp Group, LLC?

 No.

16. Did Richard Campagna and Rocco Campagna conspire
 to divert money and property from Judges Road to the
 Camp Group, LLC?

 Yes.

17. What amount of unpaid distributions is Dennis
 Chisum entitled to receive from Parkway?

 $10,695.00

18. What amount of unpaid distributions is Dennis
 Chisum entitled to receive from Judges Road?

 $3,927.00
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Later that day, the trial court instructed the jury with respect to the amount of

 punitive damages, if any, that Mr. Chisum was entitled to recover.

¶ 25 On 16 August 2018, the trial court informed the parties that it was “highly

 likely” that it would order dissolution of Judges Road and Parkway. On the same

 day, the jury returned a verdict determining that:

 19. Is Richard Campagna liable to Parkway for punitive
 damages?

 Yes.

 20. What amount of punitive damages, if any, does the jury
 in its discretion award against Richard Campagna to
 Parkway?

 $150,000.00

 21. Is Richard Campagna liable to Judges Road for
 punitive damages?

 Yes.

 22. What amount of punitive damages, if any, does the jury
 in its discretion award against Richard Campagna to
 Judges Road?

 $350,000.00

 23. Is Rocco Campagna liable to Parkway for punitive
 damages?

 No.

 24. What amount of punitive damages, if any, does the jury
 in its discretion award against Rocco Campagna to
 Parkway?

 N/A
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 25. Is Rocco Campagna liable to Judges Road for punitive
 damages?

 Yes.

 26. What amount of punitive damages, if any, does the jury
 in its discretion award against Rocco Campagna to
 Judges Road?

 $250,000.00

¶ 26 On 11 October 2018, the trial court entered a final judgment which required

 the Campagnas to pay the compensatory and punitive damages amounts determined

 to be appropriate by the jury while reflecting the following additional determinations:

 IT IS FURTHER ORDERED, in the Court’s
 discretion, that judgment is entered for [Mr. Chisum] as to
 [Mr. Chisum]’s claims for declaratory judgment with
 regard to Parkway and Judges Road. The Court declares
 that [Mr. Chisum] remains a member of Parkway, with a
 current percentage of ownership in the company of 8.34%.
 The Court declares that [Mr. Chisum] remains a member
 of Judges Road, with a current percentage of ownership in
 the company of 18.884%.

 IT IS FURTHER ORDERED that, in the Court’s
 discretion, judgment is entered for [Mr. Chisum] against
 Defendants on [Mr. Chisum]’s claims for judicial
 dissolution of Parkway and Judges Road pursuant to
 [N.C.G.S.] § 57D-6-02(2)(i).[2] The evidence at the trial
 established that it is not practicable for [Mr. Chisum] and
 the Campagnas to conduct the business of Parkway and
 Judges Road in conformance with the operating

 2 Subsection 57D-6-02(2) provides that “[t]he superior court may dissolve an LLC in a

 proceeding brought by . . . [a] member, if it is established that (i) it is not practicable to
 conduct the LLC’s business in conformance with the operating agreement and this Chapter
 or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member.”
 N.C.G.S. § 57D-6-02(2) (2019).
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 agreements. Parkway, once it is reinstated, and Judges
 Road are hereby dissolved.

 IT IS FURTHER ORDERED that, in the Court’s
 discretion, pursuant to [N.C.G.S] §§ 1-502(2) and 57D-6-04,
 in order to carry the judgment into effect, the Court in its
 discretion shall appoint a receiver for Parkway and for
 Judges Road under the authority and subject to the duties
 as set forth in the separately entered orders of this date.

 On the same date, the trial court entered orders appointing George M. Oliver to serve

 as the receiver for Parkway and Judges Road.

 5. Post-Trial Motions

¶ 27 On 22 October 2018, defendants filed a number of post-trial motions. First,

 defendants filed a motion seeking the entry of judgment in their favor

 notwithstanding the verdict pursuant to N.C.G.S. § 1A-1, Rule 50(b), on the grounds

 that (1) Mr. Chisum’s claims for declaratory judgment were barred by the statute of

 limitations, a fact that deprived him of the standing needed to maintain the

 derivative claims, or, in the alternative, that judgment should be entered in

 defendants’ favor with respect to the derivative claims for breach of fiduciary duty

 and constructive fraud on the grounds that Mr. Chisum had failed to prove the actual

 damages that were necessary to support those claims; (2) concerning the verdict in

 favor of Judges Road regarding the derivative claims that had been asserted against

 Rocco Campagna, it was legally inconsistent for the jury to have found Rocco

 Campagna liable for constructive fraud without also finding him liable for breach of
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 fiduciary duty; (3) with respect to the derivative claims for constructive fraud, the

 evidence elicited at trial demonstrated that the Campagnas had acted in an open,

 fair, and honest manner, with this fact sufficing to rebut the presumption that they

 were liable for constructive fraud; and (4) the punitive damages awards in favor of

 Judges Road and Parkway cannot be predicated upon the underlying claims for

 liability or, in the alternative, that the punitive damages claim by Judges Road

 cannot stand in light of the jury’s determination that Judges Road had not suffered

 any actual damages of the type necessary to support a claim for breach of fiduciary

 duty or constructive fraud.

¶ 28 In an alternative motion for a new trial, defendants contended that a new trial

 was necessary because (1) the jury had been erroneously instructed that the statute

 of limitations applicable to Mr. Chisum’s declaratory judgment claims did not begin

 to run until Mr. Chisum had been put on notice of the existence of these claims; (2)

 the derivative claims for breach of fiduciary duty and constructive fraud required

 proof of actual, rather than merely nominal, damages; (3) with respect to the breach

 of fiduciary duty and constructive fraud claims involving Judges Road, the jury had

 failed to find the existence of actual damages; (4) the jury returned legally

 inconsistent verdicts given that it had found Rocco Campagna liable for constructive

 fraud while refraining from finding him liable for breach of fiduciary duty; and (5)

 the trial court erred by failing to instruct the jury that a finding that the Campagnas
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

had acted openly, fairly, and honestly sufficed to rebut the presumption of

constructive fraud. In an alternative motion to alter or amend the judgment pursuant

to N.C.G.S. § 1A-1, Rules 59(a) and (e), defendants argued that (1) the total amount

of punitive damages awarded to Judges Road should be reduced to the maximum

statutory cap of $250,000.00 pursuant to N.C.G.S. § 1D-25(b) and that it was unclear

as to whether the jury had intended to return identical damage awards against

Richard Campagna and Rocco Campagna or whether the jury believed that the trial

court would divide a single award of $128,757.00 between those two defendants; (2)

the judgment concerning the dissolution of the LLCs and the appointment of a

receiver should be altered or amended based upon a contention that the record did

not contain sufficient evidence to justify the adoption of dissolution as a remedy, that

the trial court had failed to afford the Campagnas a hearing with respect to

dissolution-related issues as required by statute, and that the appointment of a

receiver was “unnecessary and unwarranted”; (3) they should have been given the

option of purchasing Mr. Chisum’s remaining membership interests in the LLCs

pursuant to N.C.G.S. § 57D-6-03(d); and (4) the required hearing was not held prior

to the trial court’s appointment of a receiver. In addition, defendants filed a motion

for relief from the trial court’s orders appointing a receiver and for the trial court to

direct that the LLCs pay the receiver-related fees and expenses specified in the trial

court’s orders appointing receivers for Judges Road and Parkway and a motion
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 seeking the entry of a stay of the trial court’s final judgment and of the orders

 appointing receivers for Judges Road and Parkway pending disposition of their other

 post-trial motions.

¶ 29 Similarly, Mr. Chisum filed a series of post-trial motions on 22 October 2018

 in which he sought (1) the entry of judgment notwithstanding the verdict with respect

 to the declaratory judgment claim relating to his ownership interest in Carolina

 Coast or, in the alternative, a new trial or an alteration or amendment of the

 judgment relating to that claim; (2) a new trial concerning the other claims that Mr.

 Chisum had asserted related to Carolina Coast; (3) an amendment to the judgment

 cancelling the deeds that transferred the property to The Camp Group; and (4) an

 amendment to the judgment to bar the Campagnas from receiving distributions that

 included any of the punitive damages amounts that they had been ordered to pay to

 Parkway or Judges Road.

¶ 30 On 5 December 2018, the trial court stayed the execution of the final judgment

 and its orders appointing a receiver for Judges Road and Parkway while directing the

 Campagnas to post bond in the amount of $600,000.00, an action that the Campagnas

 took on or about 5 February 2019. On 6 February 2019, the trial court entered an

 order divesting the receiver who had been appointed to operate and dissolve Parkway

 and Judges Road of his authority to act in that capacity pending the resolution of the

 post-trial motions. On 25 April 2019, the trial court entered an order addressing the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 parties’ post-trial motions. In its order, the trial court amended its judgment by

 reducing the amount of punitive damages awarded to Judges Road against Richard

 Campagna to the statutorily-prescribed sum of $145,825.00 and reduced the amount

 of punitive damages awarded to Judges Road against Rocco Campagna to the

 statutorily-prescribed amount of $104,175.00 while denying the remainder of the

 parties’ post-trial motions. Defendants noted an appeal to this Court from the trial

 court’s final judgment and post-trial orders while Mr. Chisum noted a cross-appeal to

 this Court from the trial court’s final judgment and certain preliminary and post-trial

 orders.

 II. Substantive Legal Analysis

 A. Standard of Review

¶ 31 This Court reviews a trial court’s legal determinations, including its decisions

 to grant or deny motions to dismiss for failure to state a claim for which relief can be

 granted, see Sykes v. Health Network Sols., Inc., 372 N.C. 326, 332 (2019), and the

 correctness of the trial court’s instructions to the jury, see Chappell v. N.C. Dep’t of

 Transp., 374 N.C. 273, 281 (2020), using a de novo standard of review. The issue

 before a reviewing court in determining whether a motion for a directed verdict or

 judgment notwithstanding the verdict should have been allowed or denied focuses

 upon “whether the evidence, taken in the light most favorable to the non-moving

 party, is sufficient as a matter of law to be submitted to the jury.” Davis v. Dennis
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

Lilly Co., 330 N.C. 314, 322 (1991) (citation omitted). In view of the fact that trial

court decisions to dissolve an LLC pursuant to N.C.G.S. § 57D-6-02 and to appoint a

receiver pursuant to N.C.G.S. § 57D-6-04 (stating that a trial court “may appoint . . .

a receiver . . . if dissolution is decreed by the court to wind up the LLC” (emphasis

added)), are discretionary in nature, we review such determinations using an abuse

of discretion standard of review. See Campbell v. Church, 298 N.C. 476, 483 (1979)

(stating that “the use of ‘may’ generally connotes permissive or discretionary action

and does not mandate or compel a particular act”); Mitchell, Brewer, Richardson,

Adams, Burge & Boughman, PLLC v. Brewer, 209 N.C. App. 369, 392 (2011) (stating

that “the issuance of . . . an order of [judicial] dissolution is within the trial court’s

discretion”). In the same vein, “[t]he trial judge has the discretionary power to set

aside a verdict when, in his opinion, it would work injustice to let it stand”; “if no

question of law or legal inference is involved in the motion, his action in so doing is

not subject to review on appeal in the absence of a clear abuse of discretion.” Piazza

v. Kirkbride, 372 N.C. 137, 143 (2019) (quoting Selph v. Seplh, 267 N.C. 635, 637

(1996)). A ruling committed to the trial court’s discretion will not be overturned for

an abuse of discretion in the absence of “a showing that its ruling was manifestly

unsupported by reason and could not have been the result of a reasoned decision.”

Friday Invs., LLC v. Bally Total Fitness of the Mid-Atl., Inc., 370 N.C. 235, 241 (2017)

(quoting In re Foreclosure of Lucks, 369 N.C. 222, 228 (2016)).
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 B. Defendants’ Appeal

 1. Accrual of the Statute of Limitations

¶ 32 As an initial matter, defendants contend that, as far as Mr. Chisum’s

 declaratory judgment claims are concerned, the trial court erred by submitting to the

 jury the issue of when Mr. Chisum had notice of the Campagnas’ breach of the

 operating agreements for Judges Road and Parkway. According to defendants, the

 trial court erred by submitting the issue of the date upon which Mr. Chisum had

 notice of the Campagnas’ alleged breaches of the operating agreements to the jury on

 the grounds that the applicable statute of limitations began running at the moment

 of the breach regardless of the extent to which the injured party had notice that the

 breach had occurred. In defendants’ view, the undisputed record evidence tended to

 show that any breaches of the operating agreements for Judges Road and Parkway

 that the Campagnas might have committed occurred outside of the three-year

 limitations period applicable to breach of contract-based declaratory judgment

 claims. In support of this contention, defendants direct our attention to Mr. Chisum’s

 testimony that the Campagnas took control of Judges Road and Parkway in 2012 and

 sold Parkway’s assets in January 2013 in violation of the applicable operating

 agreements and to Richard Campagna’s testimony that, after he and Rocco

 Campagna had made a capital contribution to Judges Road in August 2012 following

 Mr. Chisum’s refusal to do so, the Campagnas assumed total ownership and control
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 over both Judges Road and Parkway. In addition, defendants point to evidence that,

 as of 1 January 2013, Mr. Chisum had ceased making decisions for either LLC and

 was no longer receiving benefits as a member of either Judges Road or Parkway. As

 a result, defendants contend that Mr. Chisum’s declaratory judgment claims

 involving Judges Road and Parkway were time-barred at the time that he filed his

 initial complaint in this case in July 2016.

¶ 33 In seeking to persuade us to reject defendants’ contention, Mr. Chisum

 contends that established North Carolina law requires the existence of notice before

 the limitations period associated with a breach of contract claim begins to accrue and

 that an analysis of the record evidence demonstrates the existence of triable issues of

 fact with respect to the date upon which he had notice of the Campagnas’ breaches of

 the Judges Road and Parkway operating agreements. Mr. Chisum claims that he

 cannot be said to have been on actual or constructive notice that a breach of the

 Judges Road and Parkway operating agreements had occurred given that the

 Campagnas had never amended the Schedule 1s associated with either entity to

 reflect the extinguishment of his ownership interests in light of Mr. MacDonald’s

 testimony that the Schedule 1s provided the “definitive” statement of a member’s

 interest in the LLCs and the fact that he had informed Mr. Chisum that he was a

 member to the extent shown on the Schedule 1s within three years of Mr. Chisum

 filing the complaint in this lawsuit. In addition, Mr. Chisum asserts that the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Campagnas continued to send him K-1s showing that he was a member of Judges

 Road and Parkway, “including [documents transmitted] within 3 years of when he

 filed the lawsuit.” In the event that notice of breach is required before the applicable

 statute of limitations began to run, Mr. Chisum points out that “[defendants] do not

 argue that the evidence was insufficient in that event.”

¶ 34 As a general proposition, “a statute of limitations should not begin running

 against [a] plaintiff until [the] plaintiff has knowledge that a wrong has been inflicted

 upon him.” Black v. Littlejohn, 312 N.C. 626, 639 (1985). On the other hand, “as soon

 as the injury becomes apparent to the claimant or should reasonably become

 apparent, the cause of action is complete and the limitation period begins to run.”

 Pembee Mfg. Corp. v. Cape Fear Constr. Co., Inc., 313 N.C. 488, 493 (1985). The Court

 recognized the validity of this principle in the breach of contract context in

 Christenbury Eye Center, P.A. v. Medflow, Inc., 370 N.C. 1 (2017), in which the parties

 had entered into an agreement requiring the defendants to provide the plaintiff with

 software improvements and the defendants failed to make a required royalty

 payment on 20 October 2000; failed to make another payment at any subsequent

 time; failed to provide written reports; and made prohibited sales—all of which were

 actions constituting a breach pursuant to the agreement. Id. at 3. Although the

 defendants remained in breach of the contract for the next decade, plaintiff did not

 file suit until 22 September 2014. Id. In affirming the trial court’s decision to dismiss
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 the plaintiff’s breach of contract claim on the grounds that it was time-barred, we

 noted that “North Carolina law has long recognized the principle that a party must

 timely bring an action upon discovery of an injury to avoid dismissal of the claim” and

 held that “[s]tatutes of limitations require the pursuit of claims to occur within a

 certain period after discovery.” Id. at 2 (emphases added). As a result, given that the

 plaintiff “had notice of its injury as early as 20 November 1999,” when the defendants

 did not submit their first monthly report, “and certainly by 20 October 2000, when

 [the] defendants failed to pay the first $500 minimum royalty payment,” we held that,

 “[b]ecause [the] plaintiff had notice of its injury yet failed to assert its rights, all of

 [the] plaintiff’s claims are time barred.” Id. at 6–7.

¶ 35 We recognized the same principle in Parsons v. Gunter, 266 N.C. 731 (1966),

 in which the parties had agreed to jointly develop, patent, and sell cotton card drive

 machines and to divide any resulting profits. Id. at 731. After the machines became

 successful, the defendant independently formed a separate corporation to market the

 machines, began realizing large profits, and patented the machinery. Id. at 731–32.

 When the plaintiff demanded an accounting in May 1960, the defendant responded

 by saying that “there was not enough room for both of us in selling these card drives.”

 Id. at 733. Over three years later, the plaintiff brought a breach of contract action

 against the defendant in reliance upon the parties’ earlier agreement. Id. In

 upholding the trial court’s determination that the plaintiff’s action was time-barred,
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 we noted that the plaintiff had filed suit “[m]ore than three years . . . after [the]

 plaintiff was put on notice of [the defendant’s] disavowal of any obligation to [the]

 plaintiff and the institution of this action.” Id. at 734 (emphasis added).

¶ 36 Admittedly, a number of our prior decisions have been somewhat opaque in

 addressing the issue that is before us in this case. See, e.g., Pearce v. N.C. State Hwy.

 Patrol Voluntary Pledge Comm., 310 N.C. 445 (1984); Penley v. Penley, 314 N.C. 1

 (1985). However, the entire principle upon which defendants’ argument hinges,

 which is that the statute of limitations begins to run against a plaintiff who has no

 way of knowing that the underlying breach has occurred, runs afoul of both our recent

 decisions, such as Christenbury, and basic notions of fairness. The evidence contained

 in the present record demonstrates that, even though the operating agreements

 specified the manner in which “all notices, demands and requests” were required to

 be given, Mr. MacDonald was unable to recall whether the 25 June 2012 letter that

 he sent to Mr. Chisum concerning Judges Road complied with the terms of the

 operating agreements, while Mr. Chisum testified that he never received the letter

 in question. In addition, even though Mr. Chisum’s 2013 Parkway K-1 was dated 7

 April 2014, Mr. Chisum testified that he did not receive it until October 2014 and

 that he first became aware that the Campagnas had attempted to extinguish his

 ownership interests in the LLCs in March 2016, when he unsuccessfully attempted

 to access his complimentary Judges Road storage unit. As a result, we affirm the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 trial court’s determination that the statute of limitations applicable to the declaratory

 judgment claims that Mr. Chisum asserted against defendants began running at the

 time that he became aware or should have become aware of the Campagnas’ breaches

 of the operating agreements and that the record contained sufficient evidence that

 Mr. Chisum’s declaratory judgment claims relating to Judges Road and Parkway

 were not time-barred to support the submission of the statute of limitations issue to

 the jury.

 2. Necessity for Proof of Actual Damages

¶ 37 Secondly, defendants argue that the trial court erred by failing to direct a

 verdict or enter judgment notwithstanding the verdict in their favor with respect to

 the derivative claims for breach of fiduciary duty and constructive fraud relating to

 Judges Road. In support of this contention, defendants contend that the record

 contained no evidence that Judges Road had suffered actual damages, a deficiency

 that defendants believe to be fatal to Mr. Chisum’s chances for success with respect

 to the relevant claims. In defendants’ view, nominal damages, standing alone, are

 insufficient to support claims for constructive fraud and breach of fiduciary duty, with

 Mr. Chisum having failed to elicit any evidence that Judges Road had sustained any

 actual damages as a result of the Campagnas’ conduct.

¶ 38 In response, Mr. Chisum begins by arguing that defendants did not properly

 preserve this contention for purposes of appellate review by failing to raise it at trial
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 and invited any error that the trial court might have committed by requesting the

 trial court to instruct the jury with respect to the breach of fiduciary duty and

 constructive fraud claims in such a manner as to permit the jury to find in Mr.

 Chisum’s favor based upon an award of nothing more than nominal damages. In

 addition, Mr. Chisum contends that he did, in fact, offer evidence tending to show

 that Judges Road had sustained actual damages as the result of the Campagnas’

 conduct, including evidence which demonstrated that the Campagnas had made

 loans to themselves from the LLCs, sold essentially all of Judges Road’s assets

 without either informing or obtaining consent from Mr. Chisum, and paid themselves

 large “management fees” from the LLCs despite their admission that they were “not

 supposed to get such fees.” Finally, Mr. Chisum asserts that North Carolina law

 allows the assertion of breach of fiduciary duty and constructive fraud claims based

 upon nothing more than an award of nominal damages.

¶ 39 Although this Court has not previously addressed the issue of whether a

 plaintiff is required to prove actual damages in support of breach of fiduciary duty

 and constructive fraud claims, the Court of Appeals has addressed this issue on a

 number of occasions. In Sloop v. London, 27 N.C. App. 516 (1975), the plaintiffs

 sought to recover damages for wrongful foreclosure in reliance upon a breach of

 fiduciary duty theory. Id. at 518. After the trial court directed a verdict in favor of

 the defendants on the grounds that the record was devoid of any evidence tending to
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 show that a wrongful foreclosure had occurred or that the plaintiffs were entitled to

 recover actual damages from the defendants, the Court of Appeals reversed the trial

 court’s decision on the grounds that, “regardless of proof of any actual damages, [the]

 plaintiffs would be entitled to at least nominal damages should the jury find there

 was a wrongful foreclosure.” Id. (citing Bowen v. Fid. Bank, 209 N.C. 140 (1936); 5

 Strong, N.C. Index 2d, Mortgages and Deeds of Trust, § 39, pp. 594–95).

¶ 40 Similarly, in Mace v. Pyatt, 203 N.C. App. 245 (2010), the plaintiff asserted

 claims for trespass, conversion, forgery, fraud, and damage to personal property;

 prevailed upon all of those claims before a jury; and was awarded compensatory and

 punitive damages. Id. at 250. On appeal, the defendant argued that, given the

 absence of evidence concerning the amount of compensatory damages that the

 plaintiff was entitled to recover, the jury should not have been allowed to consider

 whether either compensatory or punitive damages should be awarded. Id. at 253.

 Although the Court of Appeals vacated the jury’s award on the grounds that the

 compensatory damages issue should not have been submitted to the jury, id. at 254–

 55, it recognized that the record contained evidence tending to show that the plaintiff

 had suffered nominal damages and upheld the jury’s punitive damages award for that

 reason, id. at 255–57, stating that:

 [i]t is well established that merely nominal damages may
 support a substantial award of punitive damages. Once a
 cause of action is established, [a] plaintiff is entitled to
 recover, as a matter of law, nominal damages, which in
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 turn support an award of punitive damages. Nominal
 damages need only be recoverable to support a punitive
 damages award, and a finding of nominal damages by the
 jury is not required where [a] plaintiff has sufficiently
 proven the elements of her cause of action.

 Id. at 255 (cleaned up). As a result of its determination that the plaintiff was entitled

 to recover nominal damages, the Court of Appeals concluded that the jury’s punitive

 damages award should be upheld. Id. at 256–57.

¶ 41 The plaintiff in Bogovich v. Embassy Club of Sedgefield, Inc., 211 N.C. App. 1

 (2011), asserted claims for breach of fiduciary duty, constructive fraud, and unfair

 and deceptive trade practices against multiple defendants, including a husband and

 wife. Id. at 2. After the trial court granted summary judgment in favor of the plaintiff

 with respect to her constructive fraud and unfair and deceptive trade practices

 claims, the jury found for the plaintiff with respect to her claim for breach of fiduciary

 duty and awarded her $12,165.00 in compensatory damages against the couple,

 $510,000.00 in punitive damages against the husband, and $1.00 in punitive damages

 against the wife. Id. at 7. On appeal, the defendants challenged the trial court’s

 decision to grant summary judgment in favor of the plaintiff with respect to her

 constructive fraud claim on the grounds that the plaintiff had failed to establish the

 amount of compensatory damages to which she was entitled. Id. at 11. In rejecting

 the defendants’ argument, the Court of Appeals concluded that “the undisputed

 evidence established the existence of all of the elements required for a finding of
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 liability for constructive fraud” and that, “[a]ccording to well-established law, once a

 cause of action [has been] established, [the] plaintiff is entitled to recover, as a matter

 of law, nominal damages.” Id. at 12 (second alteration in original).

¶ 42 In Collier v. Bryant, 216 N.C. App. 419 (2011), the plaintiffs asserted claims

 for actual and constructive fraud. However, the trial court granted summary

 judgment in favor of the defendant with respect to those claims. Id. at 423. On

 appeal, the plaintiffs contended that the record reflected the existence of genuine

 issues of material fact relating to the damages issue, id. at 430, while the defendants

 asserted that the plaintiffs were not entitled to recover punitive damages on the

 grounds that the plaintiffs could not prove the elements of their underlying

 substantive claims, id. at 434. In rejecting the defendants’ argument, the Court of

 Appeals held that punitive damages are “incidental damages to a cause of action” and

 “can be awarded if either actual or constructive fraud is shown.” Id. In other words,

 the Court of Appeals held that, even though “nominal damages must be recoverable”

 in order to support a punitive damages award, “there is no requirement that nominal

 damages actually be recovered.” Id.

¶ 43 Similarly, the plaintiff in Harris v. Testar, Inc., 243 N.C. App. 33 (2015),

 asserted a wrongful termination claim while the defendants counterclaimed for fraud

 and breach of fiduciary duty. Id. at 36. The trial court granted summary judgment

 in favor of the defendants, who were awarded $1.00 in nominal damages. Id. at 36–
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 37. On appeal, the plaintiff challenged the trial court’s decision to grant summary

 judgment in favor of the defendants with respect to the breach of fiduciary duty

 counterclaim. Id. at 37. The Court of Appeals, however, concluded that the plaintiff

 had breached a fiduciary duty to the defendants and allowed the trial court’s ruling

 to stand despite the fact that nothing more than nominal damages had been awarded

 to the defendants. Id. at 38–39.

¶ 44 As a result of our belief that the Court of Appeals decisions discussed above

 were correctly decided, we adopt the reasoning of the Court of Appeals and hold that

 potential liability for nominal damages is sufficient to establish the validity of claims

 for breach of fiduciary duty and constructive fraud and can support an award of

 punitive damages. Aside from the fact that nothing in the prior decisions of this Court

 indicates that proof of actual injury is necessary in order to support a claim for breach

 of fiduciary duty or constructive fraud, we see no basis for treating the incurrence of

 nominal damages as a second-class legal citizen in this context, particularly given

 that such damages do reflect the existence of a legal harm and the fact that the policy

 of North Carolina law is to discourage breaches of fiduciary duty and acts of

 constructive fraud. As a result, we affirm the trial court’s decision to enter judgment

 in Mr. Chisum’s favor with respect to the claims for breach of fiduciary duty and

 constructive fraud relating to Judges Road, including its award of punitive damages.

 3. Inconsistent Verdicts
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 45 Thirdly, defendants contend that the trial court erred by allowing the jury to

 find Rocco Campagna liable for constructive fraud given that it failed to find him

 liable for breach of fiduciary duty. According to defendants, given that the existence

 of a breach of fiduciary duty is an element of a constructive fraud claim, the jury could

 not rationally have found Rocco Campagna liable for constructive fraud once it failed

 to find that he had breached a fiduciary duty. In other words, defendants claim that,

 having found that Rocco Campagna was not liable for breach of fiduciary duty, it was

 precluded from finding him liable on a constructive fraud theory.

¶ 46 Mr. Chisum, on the other hand, contends that the trial court correctly

 determined that the jury’s verdicts were not fatally inconsistent given that the jury

 was instructed to evaluate Rocco Campagna’s conduct over two different periods of

 time in determining whether he should be held liable for breach of fiduciary duty and

 constructive fraud, with a ten-year period of time being applicable to the constructive

 fraud claim and a three-year period of time being applicable to the breach of fiduciary

 duty claim. In addition, Mr. Chisum asserts that defendants have failed to cite any

 authority in support of their argument that the jury’s verdicts with respect to the

 relevant claims are fatally inconsistent.

¶ 47 The Court of Appeals has explicitly held that, “[a]lthough the elements of

 [constructive fraud and breach of fiduciary duty] overlap, each is a separate claim

 under North Carolina law.” White v. Consol. Plan., Inc., 166 N.C. App. 283, 293 (2004)
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 (citing Governor’s Club, Inc. v. Governors Club Ltd. P’ship, 152 N.C. App. 240, 249

 (2002), aff’d per curiam, 357 N.C. 46 (2003)). This Court has implicitly endorsed the

 logic inherent in the Court of Appeals’ treatment of this question, having allowed

 plaintiffs to assert claims for both breach of fiduciary duty and constructive fraud in

 the same case. See, e.g., Orlando Residence, Ltd. v. All. Hosp. Mgmt., LLC, 375 N.C.

 140 (2020) (involving separate claims for breach of fiduciary duty and constructive

 fraud).

¶ 48 A successful claim for breach of fiduciary duty requires proof that “(1) the

 defendants owed the plaintiff a fiduciary duty; (2) the defendant breached that

 fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury

 to the plaintiff.” Sykes, 372 N.C. at 339. A successful claim for constructive fraud

 requires proof of facts and circumstances “(1) which created the relation of trust and

 confidence [between the parties], and (2) [which] led up to and surrounded the

 consummation of the transaction in which defendant is alleged to have taken

 advantage of his position of trust to the hurt of plaintiff.” Terry v. Terry, 302 N.C. 77,

 83 (1981) (second alteration in original) (quoting Rhodes v. Jones, 232 N.C. 547, 548–

 49 (1950)). Although the statute of limitations applicable to breach of fiduciary duty

 claims is three years, N.C.G.S. § 1-52(1) (2019), the limitations period applicable to

 constructive fraud claims is ten years, N.C.G.S. § 1-56(a) (2019).
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 49 In rejecting defendants’ challenge to the consistency of the jury’s verdicts with

 respect to these claims, the trial court pointed out that:

 [t]he jury was permitted to consider Rocco’s conduct for the
 10 years preceding January 6, 2017, in deciding whether
 he had committed constructive fraud, but for only 3 years
 preceding January 6, 2017, for the claim of breach of
 fiduciary duty. [Mr. Chisum] presented detailed,
 voluminous evidence regarding Judges Road financial
 transactions from 2010 through 2017. The jury could have
 concluded that Rocco engaged in acts in breach of the trust
 and confidence he owed Judges Road for which he should
 be held liable that occurred prior to, but not after, January
 6, 2014.

 After carefully reviewing the record, we agree with the trial court that the jury’s

 verdicts with respect to the breach of fiduciary duty and constructive fraud claims

 are not fundamentally inconsistent in light of the differing statutes of limitation

 applicable to those claims. Simply put, the jury’s determination that Rocco

 Campagna engaged in tortious conduct prior to 2014 has no bearing upon the issue

 of whether he engaged in tortious conduct between 2014 and 2017. As a result, we

 affirm the trial court’s determination that the jury did not act in an impermissibly

 inconsistent manner when it found Rocco Campagna liable for constructive fraud

 while declining to find him liable for breach of fiduciary duty.

 4. Instruction Concerning Open, Fair, and Honest Conduct

¶ 50 Next, defendants contend that the trial court erred by declining to instruct the

 jury concerning the effect of evidence tending to show that they acted openly, fairly,
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 and honestly in their dealings with Judges Road and Parkway upon the viability of

 Mr. Chisum’s constructive fraud claim. Defendants assert that, if the trial court had

 delivered the requested instruction, the jury would have found that the presumption

 of constructive fraud had been rebutted, so that Mr. Chisum would have been

 required to prove actual fraud and would not have been able to do so. In defendants’

 view, the record contained evidence tending to show that both Mr. Chisum and the

 LLCs sought and relied upon independent advice in connection with their dealings

 with the Campagnas, with this evidence being sufficient to support the delivery of

 the requested instruction. In addition, defendants contend that the trial court

 erroneously informed the jury that the principal issue that it was required to consider

 in addressing this claim was whether the Campagnas had been open, fair, and honest

 in their dealings with Mr. Chisum rather than in their dealings with the LLC, so that

 the trial court’s instructions shifted their fiduciary obligations “away from the party

 to whom the fiduciary duty is actually owed” to a third person.

¶ 51 In response, Mr. Chisum argues that the trial court had correctly recognized

 that defendants had failed to elicit evidence tending to show that Mr. Chisum or the

 LLCs relied upon independent advice in the course of Mr. Chisum’s dealings with the

 Campagnas and the LLCs. In addition, Mr. Chisum points to the presence of evidence

 tending to show that the Campagnas had exclusive control over the LLCs and relied

 upon the LLCs’ lawyer and accountant to do their bidding, while ignoring the advice
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 provided by the Companies’ attorney that Mr. Chisum remained a member of the

 LLCs to the extent shown on the Schedule 1s, with these facts serving to defeat

 defendants’ assertion that they had acted in an open, fair, and honest manner. Mr.

 Chisum also asserts that the trial court’s focus upon whether the Campagnas had

 acted openly, fairly, and honestly in their dealings with him as an individual was

 proper given that the underlying issue at trial was the propriety of the elimination of

 Mr. Chisum’s individual interests in the LLCs. Finally, Mr. Chisum contends that

 defendants cannot show prejudice from the trial court’s failure to deliver the

 requested instruction.

¶ 52 “It is a well-established principle in this jurisdiction that in reviewing jury

 instructions for error, they must be considered and reviewed in their entirety.”

 Desmond v. News & Observer Publ’ Co., 375 N.C. 21, 66 (2020), reh’g denied, 848

 S.E.2d 486 (N.C. 2020) (quoting Murrow v. Daniels, 321 N.C. 494, 497 (1988)). In

 evaluating the validity of a party’s challenge to the trial court’s failure to deliver a

 particular jury instruction, “we consider whether the instruction requested is correct

 as a statement of law and, if so, whether the requested instruction is supported by

 the evidence.” Minor v. Minor, 366 N.C. 526, 531 (2013).

¶ 53 In Forbis v. Neal, 361 N.C. 519 (2007), the plaintiff brought an action on behalf

 of the estates of her two aunts against the aunts’ nephew based upon certain

 transactions in which the nephew had engaged in reliance upon his authority as the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 aunts’ attorney in fact. Id. at 521. After the trial court granted summary judgment

 in the nephew’s favor, id. at 523, this Court held, in connection with the plaintiff’s

 constructive fraud claim, that, “[w]hen, as here, the superior party obtains a possible

 benefit through the alleged abuse of the confidential or fiduciary relationship, the

 aggrieved party is entitled to a presumption that constructive fraud occurred,” id. at

 529 (citation omitted), with this presumption arising “not so much because the

 fiduciary has committed a fraud, but because he may have done so,” id. (cleaned up).

 After noting that the nephew was entitled to rebut the presumption of fraud “by

 showing, for example, that the confidence reposed in him was not abused,” id.

 (cleaned up), we noted that the nephew had failed to make a sufficient showing to

 successfully rebut the presumption, id. at 530. We have also held that, once rebutted,

 the presumption of fraud “evaporates, and the accusing party must shoulder the

 burden of producing actual evidence of fraud.” Watts v. Cumberland Cnty. Hosp. Sys.,

 Inc., 317 N.C. 110, 116 (1986).

¶ 54 Although the jury instruction that the Campagnas requested the trial court to

 deliver is couched in the language of the pattern jury instructions, that fact is not

 determinative of the issue that we are required to resolve in this case. Desmond, 375

 N.C. at 70 (concluding that the pattern jury instructions did not accurately state the

 applicable law). The instruction that the Campagnas requested the trial court to

 deliver with respect to Judges Road—which is identical to the instruction that they
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 requested relating to Parkway—did not include the burden-shifting language that is

 found in our decisions with respect to this issue. Instead, the ultimate import of the

 instruction that defendants requested the trial court to deliver to the jury in this case

 stated that, if the jury found that the Campagnas had acted openly, fairly, and

 honestly in their dealings with him, Mr. Chisum would be completely barred from

 obtaining a recovery on the basis of his constructive fraud claim. In view of the fact

 that the requested instruction did not inform the jury that, if the Campagnas had

 managed to rebut the presumption of fraud, Mr. Chisum would still be entitled to a

 recovery in the event that the jury found that actual fraud had occurred, it did not

 accurately state the applicable law. As a result, the trial court did not err by failing

 to instruct the jury concerning the manner in which it should consider evidence

 tending to show that the Campagnas acted in an open, fair, and honest manner in

 accordance with defendants’ requested instruction.

 5. Identical Compensatory Damage Awards

¶ 55 Next, defendants argue that the jury’s decision to award $128,757.00 in

 compensatory damages to Parkway against each of the Campagnas created an

 impermissible ambiguity in the jury’s verdict. In support of this contention,

 defendants note that Mr. Chisum’s trial counsel suggested in his closing argument to

 the jury that the jury could award the same amount of compensatory damages against

 each defendant with the assurance that the trial court would ensure that no double
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 recovery occurred. In light of this statement, defendants contend that a reviewing

 court cannot be certain whether the jury intended to award identical amounts to

 Parkway against each defendant or if it believed that the trial court would split a

 single award of $128,757.00 in favor of Parkway between Richard Campagna and

 Rocco Campagna. Although defendants acknowledge that they failed to lodge a

 contemporaneous objection to this portion of Mr. Chisum’s jury argument, they

 contend that this omission has no bearing upon the proper resolution of their

 challenge to the compensatory damages award relating to Parkway because the

 resulting ambiguity did not become apparent until the jury had rendered its verdict.

¶ 56 In response, Mr. Chisum notes that defendants did not object to the statements

 that his trial counsel made during his closing argument and have not challenged the

 trial court’s determination that the record contained sufficient evidence to support a

 total compensatory damage award in favor of Parkway in the amount of $257,514.00.

 In light of that set of circumstances, Mr. Chisum argues that the trial court did not

 abuse its discretion by refusing to disturb the jury’s compensatory damages verdict.

¶ 57 A verdict “should be certain and import a definite meaning free from

 ambiguity,” Gibson v. Cent. Mfrs. Mut. Ins. Co., 232 N.C. 712, 716 (1950), with an

 uncertain or ambiguous verdict being insufficient to support the entry of a judgment,

 id. at 715. As a general proposition, reviewing courts presume that the jury has

 followed the trial court’s instructions. See Smith v. Perdue, 258 N.C. 686, 690 (1963).
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 For that reason, we have held jury verdicts to be fatally ambiguous in the event that

 the verdict sheet or the underlying instructions were vague, making it unclear

 precisely what the jury intended by its verdict. See State v. Lyons, 330 N.C. 298, 309

 (1991); State v. McLamb, 313 N.C. 572, 577 (1985). However, defendants’ argument

 does not focus upon any alleged deficiency in the trial court’s instructions and rests,

 instead, upon a statement made by Mr. Chisum’s trial counsel during closing

 arguments.

¶ 58 As a result of the fact that this Court has never had an opportunity to directly

 address the validity of identical compensatory damage verdicts returned against

 different defendants, defendants have directed our attention to City of Richmond,

 Virginia v. Madison Management Group, Inc., 918 F.2d 438 (4th Cir. 1990), and

 ClearOne Communications, Inc. v. Biamp Systems, 653 F.3d 1163 (10th Cir. 2011), in

 which defendants contend that similar verdicts were held to be impermissibly

 ambiguous. The decisions upon which defendants rely are, however, distinguishable

 from this case given that the defendants in those cases were treated as being jointly

 and severally liable, making it unclear whether the juries intended to apportion total

 damages between the defendants or to require the defendants to pay the same

 damage amount jointly and severally. See City of Richmond, 918 F.2d at 460–61;

 ClearOne, 653 F.3d at 1179. In view of the fact that the Campagnas have not been
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 held to be jointly and severally liable in this case, the rationale upon which the

 decisions relied upon by defendants is based has no application in this case.

¶ 59 A careful review of the record shows that the jury was clearly instructed to

 award the damages that Parkway sustained as a proximate result of the fact that

 both Richard Campagna and Rocco Campagna took “advantage of a position of trust

 and confidence to bring about the transfer of money and real property from Parkway

 to himself or his other companies.” At trial, Mr. Chisum elicited evidence tending to

 show “lost profits, loans and transfers of funds by the Campagnas to themselves, and

 losses associated with the sales of Parkway’s assets.” According to the trial court, the

 combined compensatory damages award to Parkway was “well within the range of

 compensatory damages sought for Parkway.” Moreover, the verdict sheet and the

 trial court’s instructions in this case did not contain any language that could

 reasonably have been expected to confuse the jury as to the effect of any damage

 award that it intended to make, so we have no basis for believing that the jury failed

 to act in accordance with the trial court’s instructions regardless of any statements

 that might have been made by Mr. Chisum’s trial counsel during the closing

 arguments to the jury. As a result, we hold that the trial court did not abuse its

 discretion by refraining from deciding that the jury’s compensatory damages verdict

 with respect to Parkway was impermissibly ambiguous.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 6. Judicial Dissolution and Appointment of Receiver

¶ 60 Finally, defendants argue that the trial court erred by judicially dissolving

 Judges Road and Parkway and appointing a receiver to handle the operation and

 dissolution of the two LLCs. As an initial matter, defendants contend that the trial

 court failed to make findings of fact and conclusions of law in support of its

 determination that the dissolution of Judges Road and Parkway was necessary. In

 addition, defendants claim, in reliance upon testimony from Mr. Chisum that he

 continued to consider the Campagnas to be his “good friends,” that their working

 relationship with one another was “good,” and that they all “got along very well,” that

 the record did not support the trial court’s decision to dissolve the two LLCs.

 Moreover, defendants assert that they were deprived of their statutory right to

 purchase Mr. Chisum’s interests in lieu of dissolution. Similarly, defendants contend

 that they were statutorily entitled to notice and an opportunity to be heard prior to

 the entry of an order judicially dissolving Judges Road and Parkway, with the trial

 itself being insufficient to serve as the required hearing given that the issue of

 whether the LLCs should be judicially dissolved was not at issue between the parties

 during the trial. In the same vein, defendants assert that, given Mr. Chisum’s failure

 to seek judicial dissolution of Judges Road and Parkway pursuant to clause (i) of

 N.C.G.S. § 57D-6-02(2) in his amended complaint, they had not received notice

 concerning the exact nature of the judicial dissolution claim that Mr. Chisum was
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 asserting as required by N.C.G.S. § 1A-1, Rule 8. Finally, defendants argue that the

 trial court failed to provide them with notice and an opportunity to be heard before

 appointing a receiver as required by N.C.G.S. § 57D-6-04.

¶ 61 Mr. Chisum has responded to defendants’ arguments by asserting that the trial

 court did make sufficient findings to support the entry of an order of judicial

 dissolution and that there was ample support in the record evidence for such a

 decision. In addition, Mr. Chisum claims that the Campagnas were not entitled to

 purchase his interests in Judges Road and Parkway in lieu of judicial dissolution

 given that such a “buy-out” opportunity is only available when judicial dissolution is

 ordered pursuant to clause (ii) of the applicable statute while the trial court

 predicated its decision to judicially dissolve Judges Road and Parkway upon clause

 (i). Finally, Mr. Chisum contends that the trial and related proceedings provided

 defendants with ample notice and an opportunity to be heard with respect to both the

 judicial dissolution of Judges Road and Parkway and the appointment of a receiver.

¶ 62 According to N.C.G.S. § 57D-6-02(2),

 [t]he superior court may dissolve an LLC in a proceeding
 brought by . . . [a] member, if it is established that (i) it is
 not practicable to conduct the LLC’s business in
 conformance with the operating agreement and this
 Chapter or (ii) liquidation of the LLC is necessary to protect
 the rights and interests of the member.

 N.C.G.S. § 57D-6-02(2) (2019). The rights available to the members of a judicially

 dissolved LLC vary depending upon the basis upon which the trial court decides that
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 judicial dissolution should be required. In the event that a trial court determines

 that an LLC should be judicially dissolved pursuant to clause (ii), “the court will not

 order dissolution if after the court’s decision the LLC or one or more other members

 elect to purchase the ownership interest of the complaining member at its fair value

 in accordance with any procedures the court may provide.” N.C.G.S. § 57D-6-03(d)

 (2019). Similarly, trial courts have the authority to appoint a receiver for an LLC on

 the condition that “the court shall hold a hearing on the subject after delivering

 notice, or causing the party who brought the dissolution to deliver notice, of the

 hearing to all parties and any other interested persons designated by the court.”

 N.C.G.S. § 57D-6-04(a) (2019).

¶ 63 In his amended complaint, Mr. Chisum alleged, in pertinent part, that:

 160. Defendants [Rocco] Campagna and [Richard]
 Campagna unilaterally determined that Dennis Chisum
 was no longer an owner or member of the
 Chisum/Campagna LLCs and began operating the
 companies in their own best interests, to the detriment of
 Dennis Chisum’s interests.

 161. Upon information and belief, [Rocco]
 Campagna and [Richard] Campagna have directed
 distributions to themselves without notifying Dennis
 Chisum or distributing money to him in accordance with
 his ownership interest.

 162. Based on the Campagnas’ conduct as set forth
 herein, liquidation of each of the Chisum/Campagna LLCs
 is necessary to protect the rights and interests of Dennis
 Chisum.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 163. In accordance with N.C.G.S. §§ 57D-6-02 and
 57D-6-02, [Mr. Chisum] requests that this Court dissolve
 and liquidate each of the Chisum/Campagna LLCs and
 distribute the proceeds in accordance with their respective
 ownership interests.

 A careful examination of these allegations compels the conclusion that Mr. Chisum

 sought the judicial dissolution of Judges Road and Parkway pursuant to both clauses

 of N.C.G.S. § 57D-6-02(2) by virtue of the fact that these factual allegations would

 support a determination that it was no longer practicable to operate the LLCs in

 accordance with the existing operating agreements and that judicial dissolution was

 necessary to protect Mr. Chisum’s interests, so that defendants had ample notice that

 the trial court was entitled to dissolve the two LLCs on the basis of either prong of

 the relevant statutory provision.

¶ 64 In deciding that Judges Road and Parkway should be judicially dissolved, the

 trial court found as fact that:

 a. The Campagnas and [Mr. Chisum] had no direct
 contact or communications with one another from
 approximately October of 2010, when [Mr. Chisum]
 walked out of the [Carolina Coast] members meeting,
 and the filing of this lawsuit in July 2016.

 b. The Campagnas treated [Mr.] Chisum as if his
 membership interests in Parkway and Judges Road
 had been extinguished beginning in July 2012, but
 never communicated to [Mr. Chisum] that they
 considered his memberships terminated. Richard
 Campagna admitted [Mr. Chisum] did not fail to meet
 a capital call or take any specific action which would
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 have terminated [Mr. Chisum’s] membership in
 Parkway.

 c. The Campagnas filed documents with the Secretary of
 State of North Carolina representing that Parkway
 was dissolved without notifying [Mr. Chisum], seeking
 his consent, or making any distribution to [Mr.
 Chisum].

 d. The Campagnas ceased providing [Mr. Chisum] with
 required report and financial information regarding
 Parkway and Judges Road.

 e. [Mr. Chisum]’s wife, Blanche, testified that she
 attempted to visit the Campagnas’ offices sometime in
 2012–2013 to get information regarding the LLCs, but
 that Richard ordered her to leave the premises in a
 threatening manner.

In addition, in denying defendants’ post-trial motions relating to the judicial

dissolution of Judges Road and Parkway, the trial court stated that:

 [i]n addition to this evidence, the Court also has had
 opportunity to observe the parties during the course of this
 litigation and at trial. The level of acrimony and distrust
 between the Campagnas and [Mr. Chisum] is
 extraordinary. Following this lengthy and highly
 contentious lawsuit, the Court is convinced that these
 parties could not ever again be associated with one another
 in a jointly owned business, let alone conduct the business
 of Parkway and Judges Road.

As a result, the trial court’s factual findings and the evidence received at trial provide

ample support for a determination that “it is not practicable to conduct the LLC[s’]

business in conformance with the operating agreement and this Chapter.” N.C.G.S.

§ 57D-6-02(2). As a result, we hold that the trial court properly ordered the judicial
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 dissolution of Judges Road and Parkway pursuant to clause (i) of N.C.G.S. § 57D-6-

 02(2) without giving the Campagnas the opportunity to purchase Mr. Chisum’s

 interests given that they were not entitled to do so. See N.C.G.S. § 57D-6-03(d).

¶ 65 In addition, we hold that defendants had an ample opportunity to be heard

 with respect to the issue of whether Judges Road and Parkway should be judicially

 dissolved. In view of the allegations of the amended complaint, the interrelationship

 of the other issues that were before the trial court in this case, and the extent to which

 evidence relevant to the judicial dissolution was received during the course of the

 trial, we have no hesitation in concluding that the extent to which Judges Road and

 Parkway should be judicially dissolved and whether a receiver should be appointed

 to oversee the operation and dissolution of those companies were issues before the

 court at trial. At trial, the trial court heard extensive evidence concerning the level

 of animosity between the parties and the likelihood that they would ever be able to

 work together as required by the operating agreements. In addition, the trial court

 informed the parties while the jury was deliberating that “it’s likely I will order

 dissolution here. I mean, highly likely, given the circumstances of the existing Judges

 Road” and that it typically “appoint[s] a receiver” in such circumstances. As a result,

 for all of these reasons, we hold that the trial court did not err when it ordered that

 Judges Road and Parkway be judicially dissolved and that a receiver be appointed to

 oversee the operation and dissolution of those LLCs.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 C. Mr. Chisum’s Appeal

 1. Timeliness of Carolina Coast-Related Claims

¶ 66 In seeking relief from the trial court’s judgments and orders before this Court,

 Mr. Chisum begins by arguing that the trial court erred by determining that his

 claims relating to Carolina Coast were barred by the applicable statute of limitations.

 More specifically, Mr. Chisum contends that statutes of limitation do not apply to

 actions for a declaratory judgment given that nothing is required to support the

 maintenance of such actions except the existence of an actual controversy between

 the parties, with the only time-related bar applicable to declaratory judgment actions

 being the equitable doctrine of laches. In addition, Mr. Chisum asserts that, in the

 event that this Court concludes that declaratory judgment claims are subject to any

 statute of limitation, such actions should be governed by the ten-year limitations

 period for actions sounding in constructive fraud rather than the three-year

 limitations period for actions sounding in breach of contract given that his declaratory

 judgment claims rest upon the constructive fraud claim asserted in his amended

 complaint.

¶ 67 In addition, Mr. Chisum asserts that his claims involving Carolina Coast

 should be deemed to have been timely filed even if the applicable statute of

 limitations is the three-year period governing breach of contract actions, with this

 result being the appropriate one given that the Campagnas never amended Carolina
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Coast’s Schedule 1. At an absolute minimum, Mr. Chisum argues that the record

 reveals the existence of triable issues of fact relating to whether the operating

 agreement had been breached and whether or upon what date Mr. Chisum learned

 of any such breach that were sufficient to preclude the trial court from directing a

 verdict in defendants’ favor with respect to his Carolina Coast-related claims.

 Finally, Mr. Chisum requests that, in the event that his claims relating to Carolina

 Coast are remanded to the Superior Court, New Hanover County, for a new trial, the

 trial court be directed to instruct the jury concerning the doctrine of equitable

 estoppel given the existence of evidence tending to show that the Campagnas acted

 in such a manner as to induce him to refrain from taking action to protect his interests

 prior to the filing of the initial complaint.

¶ 68 In response, defendants assert that the applicable statute of limitations is the

 three-year period applicable to a breach of contract claim, with the relevant

 limitations period having begun to run at the time of breach regardless of the extent,

 if any, to which Mr. Chisum had notice that a breach had actually occurred. In

 addition, defendants argue that the Campagnas did not act in a secretive manner in

 taking control of Carolina Coast and that Mr. Chisum had ample notice of their

 alleged breaches of contract more than three years prior to the filing of the original

 complaint.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 69 This Court has “long recognized that a party must initiate an action within a

 certain statutorily prescribed period after discovering its injury to avoid dismissal of

 a claim,” Christenbury Eye Ctr., P.A., 370 N.C. at 5, and that statutes of limitation

 exist to “afford security against stale demands, not to deprive anyone of his just rights

 by lapse of time,” id. at 5–6 (quoting Shearin v. Lloyd, 246 N.C. 363, 371 (1957),

 superseded by statute, N.C.G.S. § 1-15(b) (1971), on other grounds as recognized in

 Black v. Littlejohn, 312 N.C. 626, 630–31 (1985)). Although the General Assembly

 has not enacted a specific statute of limitations applicable to declaratory judgment

 claims, this Court has applied statutes of limitation to declaratory judgment claims

 in a number of earlier cases.

¶ 70 In Penley v. Penley, 314 N.C. 1 (1985), for example, a husband filed an action

 against his wife for the purpose of seeking a declaration that he was entitled to a 48%

 ownership interest in a fast-food business. Id. at 4. The plaintiff alleged that, in

 exchange for his full-time assistance in operating the business during a time when

 the defendant was ill, she had agreed to organize the business as a joint enterprise

 with equally divided returns. Id. at 5. The plaintiff further alleged that, in 1977, the

 parties orally formed a corporation in which each party would own a 48% interest

 while their son owned the remaining 4%. Id. Both parties served as officers and

 directors of the corporation from late 1977 through 9 April 1979, at which point the

 defendant abandoned the plaintiff. Id. After a brief reconciliation, the defendant
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 abandoned the plaintiff for a second time on 31 December 1979 and, from that point

 on, denied that the plaintiff possessed any rights in the business and wrongfully

 converted the proceeds of the business to her own use. Id. On 11 August 1981, the

 plaintiff filed a complaint seeking a declaration that he was entitled to a 48% interest

 in the corporation, a claim that the jury upheld at trial. Id. at 4. On appeal, this

 Court concluded that “the three-year contract limitations period provided in

 [N.C.G.S. §] 1-52(1) is the applicable statute of limitations,” id. at 19, and determined

 that “the breach occurred and the right to institute an action commenced, at the

 earliest, when [the] defendant broke her promise or took action inconsistent with the

 promise she made to [the plaintiff],” id. at 20. As a result, we held that, since the

 breach of contract occurred when the defendant initially failed to perform in

 accordance with the contract by abandoning the plaintiff in April 1979, the plaintiff’s

 declaratory judgment claim was not barred by the applicable three-year limitations

 period. Id. at 19–21.

¶ 71 In Williams v. Blue Cross Blue Shield of North Carolina, 357 N.C. 170 (2003),

 we considered issues arising from the General Assembly’s decision to enact legislation

 authorizing Orange County to enact a civil rights ordinance. Id. at 174–75. Acting

 in reliance upon this legislation, as amended, the Orange County Board of

 Commissioners adopted an anti-discrimination ordinance that was to be enforced by

 the Orange County Human Relations Commission. Id. at 176. In response to a civil
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 action filed by the plaintiff alleging that the defendant had discriminated against her

 on the basis of her age and sex, forced her to resign, and retaliated against her for

 filing a complaint, the defendant asserted a counterclaim in which it sought a

 declaration that the enabling legislation and the underlying ordinance violated the

 North Carolina Constitution. Id. at 176–77. On appeal from a trial court decision

 that the defendant’s claim was not time-barred and that the enabling legislation

 violated the North Carolina Constitution, this Court concluded that the defendant’s

 declaratory judgment action was not barred by the statute of limitations given that

 the defendant had not been harmed by the enactment of the enabling legislation or

 the adoption of the underlying ordinance until enforcement action had been taken

 against it, a set of circumstances that had occurred “well within any limitations

 period triggered by the suits and proceedings brought against it.” Id. at 179–81.

¶ 72 In Quality Built Homes Inc. v. Town of Carthage, 369 N.C. 15 (2016), the

 plaintiffs brought a declaratory judgment action for the purpose of obtaining a

 determination concerning whether the Town had the authority to enact and enforce

 an ordinance regulating the collection of water and sewer impact fees that were

 intended to facilitate the provision of service to future customers. Id. at 16. On

 appeal from a trial court order granting summary judgment in favor of the Town, this

 Court held that the Town lacked the statutory authority to impose and collect fees

 relating to service to be provided in the future and remanded the case to the Court of
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Appeals for a determination concerning whether the plaintiffs’ claims were barred by

 the applicable statute of limitations. Id. at 20. In the course of deciding a subsequent

 appeal, we identified the applicable limitations period by focusing upon the nature of

 the underlying substantive claim to which the request for a declaratory judgment

 related and concluded that certain of the plaintiffs’ claims were time-barred by the

 three-year statute of limitations applicable to claims arising under state or federal

 statutes. Quality Built Homes Inc. v. Town of Carthage, 371 N.C. 60, 73 (2018)

 (Quality Built Homes II).

¶ 73 Finally, in North Carolina Farm Bureau Mutual Insurance Company v. Hull,

 370 N.C. 486 (2018), we reversed a decision of the Court of Appeals for the reasons

 stated in a dissenting opinion which would have held that a declaratory judgment

 action in a subrogation-related action had been timely filed within the three-year

 limitation period applicable to breach of contract actions. See N.C. Farm Bureau Mut.

 Ins. Co. v. Hull, 251 N.C. App. 429, 435 (2016) (Tyson, J., concurring in part and

 dissenting in part). In Hull, as in Penley, Williams, and Quality Built Homes, we

 affirmed the applicability of statutes of limitations to declaratory judgment actions,

 with the appliable statute of limitations being the one associated with the substantive

 claim that most closely approximates the basis for the relevant request for a

 declaration. See Penley, 314 N.C. at 20–21 (applying the three-year statute of

 limitations applicable to actions for breach of contract given that the case in question
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

revolved around an alleged breach of contract); Quality Built Homes II, 371 N.C. at

72–73 (applying the three-year statute of limitations applicable to claims based upon

a “liability created by statute” given that the plaintiffs sought a declaration

concerning the extent to which the Town’s decision to assess certain fees relating to

future service rested upon sufficient statutory authority); Hull, 370 N.C. at 486

(endorsing the conclusion set out in the dissenting opinion at the Court of Appeals

that the three-year statute of limitations applicable to breach of contract actions

governed an action seeking a declaration concerning the extent of a parties’

subrogation rights under a policy of insurance). In the event that we believed that

statutes of limitation did not apply to declaratory judgment actions, we would not

have made any of these decisions. Moreover, we do not believe that the General

Assembly intended to exempt declaratory judgment actions from the reach of any

statute of limitations whatsoever given that such a decision might have the effect of

thwarting the enforcement of the limitation of actions provisions that pervade the

General Statutes of North Carolina by allowing plaintiffs to recast otherwise time-

barred claims as declaratory judgment actions. As a result, we hold that declaratory

judgment actions are subject to the applicable statute of limitations, which is the one

that governs the substantive right that is most closely associated with the declaration

that is being sought.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

¶ 74 Although Mr. Chisum has, in fact, asserted a constructive fraud claim in

 connection with defendants’ actions in interfering with his interest in Carolina Coast,

 he lacks the ability to assert that claim unless he is able to establish his status as a

 member of that LLC. The extent to which Mr. Chisum is a member of Carolina Coast

 hinges, in turn, upon the contents of the operating agreement associated with that

 entity, which is, of course, a contract. As a result, given that the validity of Mr.

 Chisum’s claims relating to Carolina Coast ultimately hinges upon the validity of his

 claim that defendants breached the operating agreement by diluting his membership

 interest in the LLC and assuming total control of its operations, we hold that the

 three-year statute of limitations applicable to contract claims governs the declaratory

 judgment claims at issue in this case.

¶ 75 Finally, consistent with our earlier decision that a claim for breach of contract

 accrues when the plaintiff knew or should have known that the contract had been

 breached, we hold that the trial court erred by directing a verdict in favor of

 defendants with respect to Mr. Chisum’s Carolina Coast-related claims. Although

 the record does, to be sure, contain ample evidence tending to show that Mr. Chisum

 knew or should have known of the Campagnas’ breach of the operating agreement

 more than three years prior to the filing of the initial complaint, including the fact

 that Mr. Chisum’s 2010 K-1 had been marked “[f]inal,” we believe that the record also

 contains evidence that would have permitted a reasonable jury to return a verdict in
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 Mr. Chisum’s favor with respect to this issue, including, but not limited to, the fact

 that the record contains evidence tending to show that an individual’s membership

 status relating to Coastal Carolina is reflected in the contents of the Schedule 1

 applicable to that LLC, and the fact that the Schedule 1 relating to Carolina Coast

 was never amended to show that Mr. Chisum’s membership status had been fully

 diluted and the fact that Mr. Chisum was allowed to use his complimentary storage

 unit at Judges Road until February 2016. Thus, the trial court erred by directing a

 verdict in defendants’ favor with respect to Mr. Chisum’s Carolina Coast-related

 claims.

¶ 76 As a result, given our determination that the record reveals the existence of a

 triable issue of fact relating to the extent to which Mr. Chisum knew or reasonably

 should have known that defendants had breached the Carolina Coast operating

 agreement more than three years prior to the filing of the initial complaint, we

 reverse the trial court’s decision to direct a verdict in defendants’ favor with respect

 to this issue and remand this case to the Superior Court, New Hanover County, for a

 new trial with respect to the issue of whether Mr. Chisum’s Carolina Coast-related

 claims are barred by the applicable statute of limitations. On remand, Mr. Chisum

 is free to attempt to persuade the trial court to deliver an equitable estoppel

 instruction to the jury if he wishes to do so. In the event that the jury determines on

 remand that Mr. Chisum’s initial complaint had been filed within three years after
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 he knew or reasonably should have known that defendants had breached the Carolina

 Coast operating agreement and in the event that Mr. Chisum establishes on remand

 that he remains a member of Carolina Coast, he is also entitled to assert his breach

 of fiduciary duty and constructive fraud claims against defendants, subject to his

 ability to show that those claims are not otherwise time-barred and have substantive

 merit.

 2. Punitive Damages Awards

¶ 77 Secondly, Mr. Chisum argues that, since the Campagnas own a majority of the

 interests in Judges Road and Parkway, they are otherwise entitled to receive pro rata

 distributions that include monies associated with punitive damages awards that they

 are required to pay to Judges Road and Parkway at the time that the LLCs are

 judicially dissolved. In Mr. Chisum’s view, this Court should not countenance what

 he believes to be an inequitable result, particularly given that such a result would

 thwart North Carolina’s policy of “punish[ing] a defendant for egregiously wrongful

 acts and . . . deter[ring] the defendant and others from committing similar wrongful

 acts,” quoting N.C.G.S. § 1D-1 (2019). In addition, Mr. Chisum asserts that the

 principles underlying North Carolina’s policy precluding tortfeasors from being

 enriched as a result of their own wrongs in the wrongful death context should provide

 guidance to the Court in resolving this issue as well and directs our attention to four

 decisions from other jurisdictions that, in his opinion, hold that punitive damages
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 awarded in corporate derivative actions should not be included in disbursements that

 are ultimately made for the benefit of wrongdoers. Finally, Mr. Chisum contends

 that, since he is not requesting that the jury’s verdict be altered, the necessary relief

 can be afforded by simply amending the existing judgment to reflect that any

 distribution that is eventually made to the Campagnas following the judicial

 dissolution of Judges Road and Parkway should be calculated by excluding the effect

 of the punitive damages awards that they are otherwise required to pay to the LLCs.

¶ 78 In seeking to persuade us to refrain from adopting this proposal, defendants

 note that Mr. Chisum has failed to cite any binding or persuasive authority that fully

 supports his argument. In defendants’ view, the jury was adequately informed that

 any punitive damages awards that it elected to order would be paid to the LLCs and

 that the Campagnas owned interests in Judges Road and Parkway at the time that

 the jury rendered its verdict with respect to the punitive damages issue. Finally,

 defendants assert that Mr. Chisum’s analogy to the wrongful death claims is a faulty

 one given that in such cases, unlike the situation at issue in this case, the actual

 wrongdoer is a real party in interest in the underlying litigation.

¶ 79 According to well-established North Carolina law, a party is not entitled to

 advance an argument for the first time on appeal. See Higgins v. Simmons, 324 N.C.

 100, 103 (1989). Instead, a party seeking to advance a legal claim on appeal “must

 have presented to the trial court a timely request, objection, or motion, stating the
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 specific grounds for the ruling the party desired the court to make if the specific

 grounds were not apparent from the context.” N.C.R. App. P. 10(a)(1). In addition,

 “[a] party may not make any portion of the jury charge or omission therefrom the

 basis of an issue presented on appeal unless the party objects thereto before the jury

 retires to consider its verdict, stating distinctly that to which objection is made and

 the grounds of the objection.” N.C. R. App. P. 10(a)(2).

¶ 80 A careful examination of the record demonstrates that Mr. Chisum has failed

 to properly preserve this issue for purposes of appellate review. Although Mr.

 Chisum asserted at the jury instruction conference that, pursuant to the trial court’s

 instructions, “[w]e’re punishing [defendants],” only “for 80% of the dollars to go right

 back [to them],” he failed to propose any instructions that would preclude what he

 now claims to be an inequitable outcome and asked the trial court to instruct the jury

 to simply decide how much in punitive damages should be awarded to each LLC

 without requesting that the jury attempt to specify the way in which any punitive

 damages award made in favor of Judges Road and Parkway should ultimately be

 distributed to the LLCs’ owners. After defendants’ trial counsel argued that

 if [the jury] were to award punitive damages, it is
 specifically damages that have to be reasonably related—
 they have to be exactly related to the injury that was—for
 which the jury compensated them. That injury would be to
 the LLC. So to divorce the punitive damages from the
 injury to the LLC that they’re required to base the punitive
 damages on wouldn’t make much sense[,]
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 the trial court determined that “the issue of who gets to participate in [the] punitive

 damage award can be sorted out with the final judgment.” Following the jury

 instruction conference, the trial court instructed the jury to decide the amount, if any,

 of punitive damages that Richard Campagna and Rocco Campagna should be

 required to pay to Judges Road and Parkway in punitive damages, with any punitive

 damages award being limited to an amount which “bear[s] a rational relationship to

 the sum reasonably needed to punish” the two Campagnas.

¶ 81 After having allowed the jury to deliberate and reach its verdict with respect

 to the punitive damages issue on the basis of instructions to which he did not object,

 Mr. Chisum waived the right to seek to have the allocation of the jury’s punitive

 damages award recalibrated at a later time. In essence, Mr. Chisum acquiesced in a

 jury instruction that provided that any punitive damages award that the jury elected

 to make would be paid to Judges Road and Parkway. Having done so, Mr. Chisum

 has no right to complain in the event that the trial court elected to enter judgment

 based upon the jury’s verdict as it was returned. As a result, we decline to disturb

 the trial court’s refusal to alter or amend the judgment so as to ensure that the

 Campagnas did not benefit from the jury’s decision to award punitive damages in

 favor of Judges Road and Parkway.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 3. Individual Claims for Fiduciary Duty and Constructive Fraud

¶ 82 Finally, Mr. Chisum argues that the trial court erred by dismissing his

 individual claims for breach of fiduciary duty and constructive fraud on the grounds

 that the assertion of these claims was authorized by this Court’s decision in Barger

 v. McCoy Hillard & Parks, 346 N.C. 650 (1997), given that he suffered an injury that

 was separate and distinct from that suffered by Judges Road or Parkway. As a result,

 Mr. Chisum contends that he should have been permitted to pursue his individual

 claims in addition to the derivative claims that he asserted on behalf of the LLCs.

¶ 83 In response, defendants contend that members of an LLC do not owe a

 fiduciary duty to other members and that Mr. Chisum failed to allege and prove that

 he had suffered an injury as the result of defendants’ conduct that was separate and

 distinct from any injury sustained by the LLCs. Thus, defendants urge the Court to

 determine that Mr. Chisum’s attempt to assert individual claims for breach of

 fiduciary duty and constructive fraud in this case must necessarily fail.

¶ 84 The long-standing rule in this jurisdiction is that “shareholders cannot pursue

 individual causes of action against third parties for wrongs or injuries to the

 corporation that result in the diminution or destruction of the value of their stock.”

 Barger, 346 N.C. at 658. On the other hand, however, this Court has recognized

 exceptions to the general rule “(1) where there is a special duty, such as a contractual

 duty, between the wrongdoer and the shareholder, and (2) where the shareholder
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 suffered an injury separate and distinct from that suffered by other shareholders.”

 Id. For that reason:

 a shareholder may maintain an individual action against a
 third party for an injury that directly affects the
 shareholder, even if the corporation also has a cause of
 action arising from the same wrong, if the shareholder can
 show that the wrongdoer owed him a special duty or that
 the injury suffered by the shareholder is separate and
 distinct from the injury sustained by the other
 shareholders or the corporation itself.

 Id. at 658–59; see also, e.g., Corwin v. British Am. Tobacco PLLC, 371 N.C. 605, 613

 (2018) (stating that “the second Barger exception[ ] focuses on whether the

 stockholder suffered a harm that is distinct from the harm suffered by the

 corporation”); Green v. Freeman, 367 N.C. 136, 142 (2013) (applying the Barger

 exceptions).

¶ 85 Prior to addressing the issue of whether Mr. Chisum satisfied the

 requirements for the assertion of an individual claim delineated in Barger, however,

 we must first determine whether he satisfied the requirements for the assertion of an

 individual breach of fiduciary duty or constructive fraud claim at all. As we have

 already noted, in order to successfully assert a claim for breach of fiduciary duty, “a

 plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the

 defendant breached that fiduciary duty; and (3) the breach of fiduciary duty was a

 proximate cause of injury to the plaintiff.” Sykes, 372 N.C. at 339. Similarly, the

 assertion of a successful constructive fraud claim requires a plaintiff to show that he
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 or she suffered an injury proximately caused by a defendant’s decision to take

 advantage of a position of trust. See Terry, 302 N.C. at 83.

¶ 86 A careful review of the record developed before the trial court satisfies us that

 Mr. Chisum’s breach of fiduciary duty and constructive fraud claims fail because of

 his failure to demonstrate that he sustained a legally cognizable injury. In

 attempting to demonstrate the existence of the requisite injury, Mr. Chisum claims

 that the Campagnas attempted to “freeze [him] out of the LLCs,” conducted “sham

 capital calls,” acted as if he was no longer a member of the LLCs, and treated him in

 a manner that was inconsistent with his status as a member of Judges Road and

 Parkway. Instead of showing the existence of a legally cognizable injury, the facts

 upon which Mr. Chisum relies simply describe the specific steps that the Campagnas

 took to deprive Mr. Chisum of his ownership interests in Judges Road and Parkway

 and do not show the sort of injury that is necessary to support claims for breach of

 fiduciary duty and constructive fraud. As a result, since Mr. Chisum has failed to

 establish that he suffered a legally cognizable injury as the result of the Campagnas’

 conduct, we need not determine whether any injury that Mr. Chisum might have

 suffered was separate and apart from any injury suffered by Judges Road and

 Parkway. For that reason, we affirm the trial court’s decision to dismiss Mr. Chisum’s

 individual claims for breach of fiduciary duty and constructive fraud.
 CHISUM V. CAMPAGNA

 2021-NCSC-7

 Opinion of the Court

 III. Conclusion

¶ 87 Thus, for the reasons set forth above, we hold that none of defendants’

 challenges to the trial court’s judgment and related orders have merit and that, with

 the exception of his challenge to the trial court’s decision to direct a verdict in favor

 of defendants with respect to his Carolina Coast-related claims, the same is true of

 Mr. Chisum’s challenges to the trial court’s judgment and related orders. As a result,

 the trial court’s judgments and related orders are affirmed, in part, and reversed, in

 part, and this case is remanded to the Superior Court, New Hanover County, for

 further proceedings not inconsistent with this opinion, including the holding of a new

 trial with respect to the claims relating to Carolina Coast that were asserted in Mr.

 Chisum’s amended complaint.

 AFFIRMED, IN PART, AND REVERSED AND REMANDED, IN PART.

 Justices BERGER and BARRINGER did not participate in the consideration

 or decision of this case.